Good morning, your honors. May it please the court, my name is Keith Wren. I represent Officer Dale Acosta, former officer of the Mariana, Arkansas Police Department, and also Martin Wilson, the former police chief of the Mariana, Arkansas Police Department, and Jimmy Williams, the former mayor of the city of Mariana, Arkansas. It is well settled that a judge is in control of the courtroom and also the courthouse. In this particular case, there were competing motions for summary judgment. The plaintiff in this case contended that my client, Officer Dale Acosta, when he confronted the plaintiff, that Officer Acosta was enforcing a policy of Judge Derwood King of the Mariana, Arkansas District Court. The defendants agreed with that. Not only did we agree with it, but there's evidence in the record consisting of the statement of Officer Acosta at his deposition that that's what he was doing and also the declaration of Judge King stating that Officer Acosta was enforcing his policy. Factually, what status was Officer Acosta there in that day? I mean, was he a witness in a case? Was he a courtroom bailiff? I don't want to know how he was functioning. I want to know what he was doing there that particular day. Was he assigned to work for the court or was he just an officer who had a case that day? He was there working for the court. So he was a courtroom bailiff? I mean, that was his job? He was a City of Mariana, Arkansas police officer. However, if you look at Judge King's declaration, he had told Officer Acosta and other Mariana, Arkansas officers to enforce his orders in the court. Now, I cannot point you to a... Let me ask, was he there every day? Was that his job to be there in court enforcing order in the court for the judge? I think that the evidence in the record will reflect that that's what the Mariana, Arkansas police officers did when that judge was in session in that location. They also go out and do traffic calls and investigate murders and things like that, right? They do. Did this man, was he there, was his job to be there every single day enforcing the judge's, you know, keeping order in the courtroom so to speak? I think that the evidence is that he functions as a Mariana, Arkansas police officer on most days, but when they hold court, that the Mariana, Arkansas police officers function as the de facto bailiffs for the court. Okay, I find that hard to believe because some of them have to be out enforcing traffic laws and investigating crimes and that kind of thing. They're not all sitting in his courtroom. And the judge's declaration is particularly unhelpful because it just says, I conveyed my order to Mr. Acosta and other members of the police department. So we don't know why these police officers are there. It doesn't at least, I see it as a different situation. If the officer's job, his duty that day, and it could vary from day to day, but he's been placed in that hallway today to enforce the judge's order. That's a different case than if he's just one of a mass of police officers who may be standing there because they're the next witness to be called or they just came back from having coffee in the courthouse with a couple of their buddies and then they're kind of just willy-nilly volunteering to enforce the order, right? And so the question is, what's his status there? Why was he there that morning, if the record shows that? And I would like to point to the places in the record that indicate that. Unfortunately, I can't give you page numbers, but I can tell you that there is evidence in the record where Officer Acosta testified that on the morning of this incident, that as the record shows, that the judge wanted the people in there that were dealing with defendants who were last names A through J, more those that were on the jail docket. That Officer Acosta was looking at the docket sheet and saw that Mr. Hunt, the plaintiff, he was there for Donald Williams who was in jail and he knew that Donald Williams' case was going to be caught being called up and knowing what Judge King's order was that the people that were involved in the cases either A through J who were on the jail docket were to be in the courtroom until their cases were called. Is it in the record that he did know why Mr. Hunt was there? I thought there was some confusion about whether Officer Acosta knew that. Not that Mr. Acosta didn't know why Mr. Hunt was there. Mr. Hunt placed some evidence in the record that he got conflicting information from different officers. It is our contention that that's utterly irrelevant to the question of what was told to him by Officer Acosta. At the moment of the arrest, didn't both Officer Acosta and the plaintiff, weren't they both under the assumption he was a defendant? I can't speak for what specifically Officer Acosta's subject of knowledge was at that time. I think it is clear that he misspoke. So your deal is that he misspoke when he described him as the defendant? Yes. The message conveyed to him nonetheless was you are supposed to be in the courtroom. But he arrested him for obstruction and that really is a question. I start looking at the quasi-judicial immunity and there is a difference between arresting someone for obstruction and taking someone into custody and transporting them to the courtroom because that's where they are supposed to be. What I'm looking at is that it seems like you may have a claim of quasi-judicial immunity when he stops them. Where are you going? What are you doing? You are supposed to be over here, right? But when he says I arrested him for obstruction, that becomes a totally different animal. There is no longer any quasi-judicial function of arresting someone for obstruction. You are arresting him for obstruction. You didn't arrest him for obstructing the court proceedings. He arrested him specifically for obstructing the treasurer's office. Right. I think there are two theories on that, both of which, under which the quasi-judicial immunity should have been awarded to Officer Acosta. First, why was the encounter there for the first place? Was there reasonable suspicion of a crime? No. Mr. Hunt was walking down the hallway of the courthouse. Officer Acosta did not need reasonable suspicion or probable cause to stop and limit Mr. Hunt's movement for the purpose of Judge King's order and how Judge King wanted the courtroom and the courthouse run. You know, we let judges be sort of the czar of the courtroom, and that's real, but I'm not sure that we actually have consistently said that they're czar of the courthouse, right? I mean, in the end, you sit there and you ask yourself this, by what authority does the judge tell people that they can't go into the quintessential public building and go to places where the public are not allowed? That's the case. That's the case that says that the judge is in control of the courtroom and the courthouse. That is the famous case, the Sam Shepard case that the TV show came off of, the man whose wife was murdered by the one-armed man. And the Shepard versus Maxwell case, apparently there was a media frenzy, and subsequently that case went to the United States Supreme Court, and the United States Supreme Court said that the judge presiding over Mr. Shepard's trial should have had control over the courthouse and control of the media from access to the jurors. Well, yeah, but control of the media, access to jurors, that's a very different court function than just telling somebody they can't just walk down the hallway and look at pictures of the judges hanging on the walls or something. Correct, but I think that the judge's order was that he wanted people that were involved in the case to be in his courtroom and not out anywhere else. Did anyone ever tell Mr. Hunt that he was supposed to be in the courtroom? Officer Acosta did that, not as eloquently as he could have. But wasn't there also evidence that Mr. Hunt went into the courtroom and they said there's no room here, go outside the courtroom? I think that that is Mr. Hunt's testimony and that Officer Acosta told him that he still needed to go be seated. At least, there's an audio, we can't see where he told him to go be seated, but he told him to go be seated and not to be wandering around in the halls of the courthouse. And again, is it in the record that Acosta knew that Mr. Hunt was there for a case in which the defendant was in custody? Correct. And that's in the record? That he was there to see Donald Williams? No, that Officer Acosta knew that. Yes, Your Honor, that he had looked at the docket sheet and that his testimony was that they would list out the witnesses next to those cases so they knew who was associated with the particular cases that were coming up. And he said that he knew that Mr. Hunt was there for the Donald Williams case, an incarcerated person who would be called in the first group, that he knew that his case was going to be called shortly and he went to get Mr. Hunt to tell him to stop wandering around the courthouse and to go to the courtroom where he would shortly be needed. So, in the process of that, and I would like to come back to you, Judge Erickson, that I think that the case of Martin v. Hendren says that for the judicial system to function, judges have to expect that their orders will be followed and enforced. And so, assuming that subjectively, Officer Acosta had said, because you're not coming back with me, I will arrest you for obstructing governmental operations, I think that he would have had probable cause or at least arguable probable cause to do that for the impairment of the function of the court. That was not why he arrested him. He arrested him separately because after he went to see him and to detain him and to restrict his movements to tell him where he was supposed to go, Mr. Hunt didn't do that. And instead, right outside of the collector's office, they had a confrontation that the Officer Acosta witnessed distracted the attention of the ladies in the collector's office and then they each wrote statements talking about how their performance of their job was distracted by the commotion in the hallway. Yeah, the video doesn't seem to be all that persuasive on that, right? Well, Your Honor, certainly we could look at that and say, well, Mr. Hunt wasn't being excessively loud. Well, yeah. I'll tell you what, I've worked in courthouses my whole life and I've worked mostly in trial courtrooms and trial courthouses and I've seen a lot of boisterous and rather obnoxious behaviors in the hallways. This really didn't strike me as being particularly unusual or out of the ordinary. However, the ladies that were working in the tax collector's office had their attention distracted. The record is undisputed on that. Is that the same as obstruction? I think so because it impairs a government function. Anytime somebody, I mean, if I drop a piece of plate glass and it shatters, have I obstructed the proceedings of the treasurer? Well, I think that the mental state in that statute, I don't know that it says that, but certainly knowingly you would do that. And Mr. Hunt, in his deposition, I had him read those statements and he agreed that they were accurate. And so he knew that he was two to three feet outside of that door room and that's what was going on. And in that same vein, there are cases that say, even a minor infraction of the law is sufficient for probable cause. And in a case that comes to mind, I don't think it's cited in my brief, but Ehlers, E-H-L-E-R-S versus Rapid City, a recent case where it was said that if duration is not listed as an element of the offense, then if it happened for one second, then that's enough. I would like to reserve the rest of my time for rebuttal. Very well. Mr. Porter, you're here again on a qualified immunity case. Good morning again, gentlemen. I'd just like to read this quote from Judge Hendren that I cited in my brief. It talked about how police officers are public servants. It says that it follows, therefore, that one engaged in any kind of police work does not thereby acquire some right or authority to order citizens around, to tell them to calm down, or to otherwise supervise their daily activities. I guess, based on Mr. Wren's reasoning, if someone has a car accident outside of the courthouse and the assessors are distracted, then I guess they could be arrested for obstructing government operation. I guess if a dog barks and the workers are distracted, then the dog can be arrested for obstructing government operation. The bottom line here is on the morning of January 28, 2019, Mr. Hunt went to the courthouse because he was a witness in a case, because this gentleman had stolen a computer from him. Mr. Hunt initially went inside the courtroom. He was told that if you're not here for cases A through J, you need to go outside. That's what he did. He went into the lobby of the courthouse. It was so crowded out there. Then he went outside, sat on the courthouse steps. According to Mr. Hunt, these two officers, Mariana police officers, and it's my understanding, the Mariana police department has an office right there in the courthouse building, as well as the tax assessors, as well as the county judge and other county officials in that building. When Mr. Hunt is sitting outside on the steps of the courthouse of the building, then these two officers come out there and tell him, you can't be sitting out here. He said, well, okay. He went inside and he was looking for somewhere to sit. Then he found some steps that led up. There were a lot of people sitting on the steps, so he sat on the fourth rung of the step. He sat there for about 30 minutes. Then he decided, hey, I need to go conduct some other business, so he went to see the county judge or the county treasurer. Then that's when he was stopped by Mr. Acosta. Mr. Acosta had a previous run-in with Mr. Hunt before, but he was stopped by Mr. Acosta. Mr. Porter, when he was stopped, I think you basically concede that Acosta was enforcing a policy of the judge. No, I don't really concede that. What I'm saying, Your Honor, when Mr. Acosta confronted Mr. Hunt, Mr. Acosta stated in his testimony that he wanted to know why Mr. Hunt was sitting outside. Well, here, page 17 of your summary judgment brief states, Dale Acosta was enforcing a policy of the district court judge for the city of Mariana, Arkansas. Stand corrected, yes. Okay. Yes. And then a little bit later on, in opposition to their motion, you say it was the policy of the district court judge that led to Mr. Hunt's constitutional deprivation. Why isn't that enough to create quasi-judicial immunity? Well, I guess, Your Honor, what I was doing, I was talking about the policy of the city of Mariana to loop the city in because it was the city's policy. And so when you're dealing with policy, customer practice, and so I was looping them in. But again, when Acosta confronted Mr. Hunt, he just simply said, I'm here to let you know about the judge policy. And then Mr. Hunt said, okay, I'm aware of the judge policy. And so he attempted to walk away. And then that's when Mr. Acosta said, you don't leave until I say you leave. Whoa, wait a minute. And then Mr. Hunt said, well, are you placing me under arrest? And he said, well, yeah, I'm placing you under arrest. And so he obliged him by doing it. So he wasn't enforcing, at that moment of the arrest, I don't really think he was. Maybe I said it, okay, different ways, whatever. When I analyzed it, I looked at it, I said there's a stop, that stop is clearly to enforce the judge's policy. Seems like there should be quasi-judicial immunity for that, arguably, at least. Clearly, arguably, that's really bad. In any event, but I see that. But I see a separate thing happening at the time that the seizure or arrest takes place because the purpose is different at that point. But I'm not sure that you ever clearly articulated that in your arguments before the district court, right? And so what I'm trying to figure out, is your argument that he was enforcing the policy or is the argument that he started off with the idea to enforce the policy, but the ultimate seizure, the constitutional violation was the arrest, which was for some purpose other than. And so whatever it is, we're now in the world of qualified immunity, not quasi-judicial immunity. That is the argument, Your Honor, because when Acosta confronted Mr. Hunt, he just simply told Mr. Hunt, Mr. Hunt, if you listen to it on the recording, Mr. Acosta tell Mr. Hunt, stay out of the courtroom. He told him that. And Mr. Hunt said, I'm not in the courtroom. I'm in the court building. And so Mr. Acosta told him, you can't be in the courtroom, you can't be wandering the halls, whatever the case may be. And Mr. Hunt said, look, I understand that I'm not supposed to be in the courtroom, which is why he wasn't in the courtroom. But then when Mr. Hunt attempted to walk away, then Mr. Acosta would not allow him to walk away. He said, you're not finished until I say you're finished. And so here, this officer is trying to restrict the movement of a citizen who has every right whatsoever to be in that courthouse, that court building. And so in that situation, he and Mr. Acosta admitted that at the time he confronted Mr. Hunt, he wasn't violating any laws. He wasn't doing anything wrong or anything. And so why did he even have to confront him in the first place? He wasn't in the courtroom. Yes, ma'am. I just have a question about courtroom versus courthouse and maybe in that audio that gets a little jumbled. But I understood the policy from the affidavit of the judge that he wanted, in this case, the Mr. Hunts of that day in the courtroom because Mr. Williams was an in-custody case. I don't know, Your Honor. I do know this. Mr. Hunt went into the courtroom initially. And then that's when he was told he needed to leave because he was saying the judge was only handling cases A through J. I guess, and this is just a factual misunderstanding on my part. But I thought that the in-custody cases were going up first. That's what they contend, Your Honor. But I don't know if the record really bears that out. But I'm just saying Mr. Hunt went into the courtroom. He was in the courtroom. And he was told only if your case, if only cases through A through J are going to be heard by the judge first. The defendant in the case was Donald Williams. So Mr. Hunt knew that it was going to be a while before the case involving the state versus Donald Williams was going to be heard. And that was borne out because it was some two and a half hours, three hours later that Donald Williams' case was heard. So this idea that the in-custody cases were going first is sort of not a fact that's established? No. That's correct. That's correct. And again, even if, and Mr. Acosta was not a bailiff at the time. He was not a courtroom deputy. He was not a courtroom employee. He was a Mariana Police officer. And the Mariana Police Department, as I understand it, does have an office within the courthouse, or within that court building, as well as the county judge. And I think the county sheriff has an office behind the building. But there are other offices that are in that particular building. Again, Mr. Acosta was not there as a bailiff. He was not there as a courtroom deputy. He was not there as a courtroom employee. He was a Mariana Police officer. And so why was he there? The record is completely silent as to what his purpose was in the hallway. Correct. Correct. And so this issue of quasi-judicial immunity just has no application whatsoever in this case. Even if the court were to assume that it did, which I just don't see that the evidence bears it out. Again, Mr. Acosta was arrested simply because he had simply asked the question, are you placing me under arrest? Well, yeah, I am. Hadn't done anything wrong. And the loud person wasn't Mr. Hunt. It was Mr. Acosta. If you listen to the tape, the loud person who was really getting loud was Mr. Acosta, the police officer. And it was kind of like he was trying to provoke Mr. Hunt. And as a law enforcement officer, as a police officer, you can't use your authority to yell at someone to try to get them to rise to your level. But the recording clearly shows that if anyone was creating a scene, if anyone was causing a disturbance, it was Acosta who was doing that. Can I ask you a little bit about the supervisory liability, Wilson and Williams? Yes. As I understand it, the district court essentially denied qualified immunity because it said it would have to find facts that were relevant to determining whether or not there's probable cause or arguable probable cause for the arrest, right? Isn't that analysis deficient? In other words, couldn't the court also have granted qualified immunity, whether or not there's arguable probable cause, if there's no evidence of a pattern existing or knowledge of that pattern of improper activity by Acosta, or that they were deliberately indifferent? In other words, shouldn't the court have gone on to at least say there's fact questions with respect to those issues? And I sure didn't see that in the analysis. No, Your Honor. I don't think so. Because when you look on page 40 of my brief, I cited the case of Doe versus Gay in Bob, the city of Mariana. They had a long history of police misconduct. I took the deposition of the mayor- But the court didn't do any findings on that. Well, I- Or that they were on, no, that these two particular people were on notice, or that they were therefore deliberately indifferent. Well, Your Honor, when I specifically asked in the deposition of the mayor and also, and I don't know if I'm addressing your question. I apologize if I'm not. But when I took the deposition of chief of police, then chief of police and also the mayor, I asked them, did they even know about Doe versus Gay? They basically said they didn't know anything about it. They hadn't read it. And it had a litany of all of these police misconduct that had gone on within the city of Mariana. Mr. Hunt himself had even complained to the mayor and also to the chief of police about the conduct of Mr. Acosta. Mr. Acosta also had two, at least three previous engagement. One engagement where he used deadly force. He shot at a moving car, and that's cited in my brief. And yet no disciplinary action happened to him. And there was another, a couple other incidents where I cited where there was issues of misconduct involving Mr. Acosta. So I believe, Your Honor, that the evidence at least is sufficient enough that it would have placed the mayor and also the chief of police on notice that Acosta was a problem and that something needed to be done to address that problem. And that's why I believe the court... Where's that alleged in the complaint? In the complaint? Yeah. Because I didn't see, I don't think I saw anything that said that. And if you don't plead it, it's not really in the case. Well, it was Mr. Hunt was the one who involved after the fact. And of course it was a pro se complaint. It's pretty long as I recall. It's long and there's lots of strange statements about what Mr. Hunt thought, believed, and was carrying around and doing at the time. I didn't draft a complaint, Your Honor. Yeah. Well, yeah. But I'm stuck with it. I see that. I understand that. Because what he really alleged was respondeat superior. And he pretty much alleged that just because they were Latin. And that's really nice, but that's definitely not available to him. Yeah. He who represents himself. Yeah. I get it. I don't know if you have any other questions. I appreciate your time. I ask that you affirm the decision of the judge in this case, denying qualified immunity. Thank you for your time. Thank you, Mr. Porter. Your Honor, I would like to point out that the purpose of Officer Acosta's actions in the hallway are clearly in the record. I cite them and it's in my reply brief at pages two and three in the record at the appendix at 205 through 207, where he states specifically that he was Mr. Hunt's name was attached to the case as a witness for Mr. Williams. So I think that his purpose was clear, regardless of whether or not he was a police officer as paid by the city of Mariana. And I think that there's a case I cited, Penn versus United States, that says that qualified quasi-judicial immunity has been extended to police and other court I think Judge Erickson kind of raised the point that, well, maybe he was up until the point where he did the arrest, but the arrest was totally unrelated to the judge's orders. Right. And I think that that's where we kind of have this divergence here where we're subjectively, yes, that is correct in that Officer Acosta subjectively arrested him for the commotion in the hallway for which he charged him with obstructing governmental operations. However, it is also my contention that by Mr. Hunt's failure to comply with his order to return to the courtroom, he could have been arrested for the very same offense for obstructing the judge's orders. And I think Devin Peck versus Alford stands for that proposition. Thank you, your honors. Thank you, counsel. We appreciate both counsel's appearance and arguments and briefing. Case is submitted and we'll issue an opinion in due course.